IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

DARRIN GRUENBERG,

                Plaintiff,                        OPINION & ORDER

  v.

                                                          13-cv-095-wmc

LT. TETZLAFF,

                Defendant.
───────────────────────────────────────────────────────────────

      In this civil action brought under 42 U.S.C. § 1983, plaintiff Darrin Gruenberg was granted leave to proceed on conditions of confinement and harassment claims under the Eighth Amendment against defendant Lieutenant Tetzlaff, a member of prison staff at the Columbia Correctional Institution (CCI).  Gruenberg now moves for reconsideration on one additional, unsuccessful proposed claim challenging the constitutionality of Wisconsin Administrative Code Section DOC 303.71.  (Dkt. #10.)  Gruenberg also moves to strike defendant's affirmative defenses (dkt. #17); moves for Rule 11 sanctions (dkt. #19); and brings two new motions for assistance in recruiting counsel (dkt. ##22, 25).  The court will address each motion in turn.

**I.  Motion for Reconsideration**

      The Wisconsin Administrative Code allows a security supervisor to order any inmate in segregated status to be placed in controlled segregation who exhibits disruptive or destructive behavior.  Wis. Admin. Code § DOC 303.71(1).  Even so, the institution is also required to provide an inmate in controlled segregation with certain amenities, such as a clean mattress and adequate heating, while "maintain[ing] close control of all property" when an inmate is acting in a disruptive manner.  *Id.* at §§ DOC 303.71(2), (3).

In his original complaint, Gruenberg alleged that this rule is unconstitutionally vague, because it allows supervisors to apply the rule arbitrarily in circumstances that do not justify such confinement. As noted in the screening order, the void-for-vagueness doctrine states that a rule that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). The court found no merit in Gruenberg's argument, given that similar statutes prohibiting disorderly conduct have been upheld as constitutional against vagueness challenges. In his motion for reconsideration, Gruenberg now argues that those cases are distinguishable because citizens who are determined to have engaged in disorderly conduct are not subject to the hardship of placement in a cell with nothing at all. But this distinction does not render § DOC 303.71 unconstitutionally vague. The punishment imposed on Gruenberg has nothing to do with whether the rule itself is so vague that offenders cannot determine what conduct would violate that rule.

Gruenberg also alleges that § DOC 303.71 is unconstitutional because it does not serve a meaningful or appropriate penological and medical objective. The court sees no error in its conclusion that the controlled segregation envisioned by that rule is valid, since segregation of disruptive prisoners plainly serves the goals of an orderly prison, as does the ability to maintain close control of property serves security and property interests. Nevertheless, Gruenberg argues in his motion for reconsideration that the court has misapprehended his claim and that he is actually alleging that there is no legitimate prison objective in placing prisoners in controlled segregation with nothing, when those prisoners have engaged only in trivial conduct. Not only does this have no bearing on Gruenberg's

challenge to § DOC 303.71 as written, but as previously noted, § DOC 303.71 actually *requires* that prisoners in controlled segregation be given amenities like a clean mattress, adequate heat, adequate clothing and essential hygiene supplies. What Gruenberg is really alleging is that, contrary to § DOC 303.71, he was placed in a cell without those things, which constituted denial of the "minimal civilized measure of life's necessities." *Scarver v. Litscher*, 371 F. Supp. 2d 986, 1003 (W.D. Wis. 2005). While those allegations may support an Eighth Amendment conditions-of-confinement claim, Gruenberg has already been granted leave to proceed on that claim. (*See* Opinion & Order (dkt. #10) 4-5.)

Though he does not explicitly challenge the court's denial of leave to proceed on his due process claim, in one paragraph of his motion to reconsider, Gruenberg appears to argue error in that conclusion as well. Gruenberg states that whether a deprivation of liberty is short-term is irrelevant, presumably to argue that his relatively short segregation is sufficient to allege a liberty interest. The Seventh Circuit has stated, however, that in the context of a due process claim premised on disciplinary segregation, a liberty interest may arise "if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (emphasis added). Both the duration and the conditions of segregation must, therefore, be considered in a due process analysis. *Id.* (citing *Bryan v. Duckworth*, 88 F.3d 431, 433-34 (7th Cir. 1996), *abrogated on other grounds*, *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998)). As the court recognized in its previous order in this case, the conditions Gruenberg alleges were severe, but the duration of his confinement was short -- just nine hours. Under Seventh Circuit precedent, that is not enough to allege a liberty interest. *See, e.g.*, *Townsend v. Fuchs*, 522 F.3d 765, 771-72 (no liberty interest based on 59 days in

3

administrative segregation). As in *Townsend*, "[t]he issue of the cell conditions in [controlled segregation] is best analyzed as a claim brought under the Eighth Amendment." *Id.* at 772. Again, Gruenberg has been given leave to proceed on that claim, and the court sees no error in the determination that he may not also proceed under the Fourteenth Amendment. *See Albright v. Oliver,* 510 U.S. 266, 273 (1994) (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)).

## II. Motion to Strike Defenses

Gruenberg also asks the court to strike certain of Tetzlaff's defenses pursuant to Fed. R. Civ. P. 12(f), which provides in relevant part that "[t]he court may strike from a pleading an insufficient defense." Such a motion is appropriate only where "the defense is frivolous or clearly presents no bona fide issue of fact or law." *Prudential Ins. Co. of Am. v. Marine Nat'l Exchange Bank*, 55 F.R.D. 436, 438 (E.D. Wis. 1972). Before granting a motion to strike, "the Court must 'be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *In re Midway Airlines, Inc.*, 175 B.R. 239, 242 (Bankr. N.D. Ill. 1994) (applying Fed. R. Civ. P. 12(f) (quoting *Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1031 (N.D. Ill. 1980)).

Gruenberg seeks to strike eight of nine articulated "defenses" and all three of defendant's affirmative defenses, though he only offers argument on some of them.[1] First, Gruenberg challenges the defense that all or a portion of his complaint fails to state a claim on which relief can be granted, arguing that the court has essentially concluded by screening his complaint that he *does* state such a claim. Tetzlaff responds that this defense is intended

---

[1] Those defenses on which Gruenberg does not offer argument will obviously not be stricken.

4

merely to preserve his ability to move for dismissal, either on the merits or based on a failure to exhaust administrative remedies. Tetzlaff is correct that "certain affirmative defenses like failure to exhaust administrative remedies . . . or qualified immunity may be argued in a motion to dismiss." *Seabolt v. Champagne*, No. 05-C-1240, 2006 WL 3192511, at *2 (E.D. Wis. Nov. 2, 2006). By asserting this defense, Tetzlaff does no more than preserve his right to bring a motion to dismiss, and the court cannot say such a motion would be frivolous on its face. *See id.* Indeed, Tetzlaff has never had an opportunity to be heard on this argument, and the court would be remiss to conclude he cannot prevail based only on a one-sided screening order. Thus, the motion to strike defense (1) will be denied.

Next, Gruenberg challenges defense (2), which states that this action "is subject to the requirements, provisions, terms, conditions, and limitations of Wis. Stat. § 893.82" to the extent it states any state law claims. At the present time, Gruenberg has not been granted leave to proceed on any state law claims in this action. Thus, he is correct that this defense has no bearing on the *present* suit and can be stricken.[2]

Gruenberg also challenges defense (4), which alleges that Tetzlaff "acted in good faith." While Gruenberg is correct that the question of good faith is irrelevant in the qualified immunity context, s*ee Elliot v. Thomas*, 937 F.2d 338, 344 (7th Cir. 1991), as Tetzlaff points out, his state of mind and whether he acted in good faith is certainly relevant to Gruenberg's Eighth Amendment harassment claim, since that claim requires Gruenberg to prove that Tetzlaff acted to humiliate him and inflict psychological pain. *See Calhoun v.*

---

[2] In the event Gruenberg were granted leave to amend his pleadings to add state law claims, Tetzlaff would, of course, have the opportunity to answer the amended pleading and could at that time assert Wis. Stat. § 893.82 as a defense.

*DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). While perhaps unnecessary, since it is already in issue, the motion to strike this defense will, therefore, be denied.

Gruenberg's next challenge is to defense (6), which states that "[n]o answering defendant can be found liable for the actions of any other under a theory of respondeat superior." Here, Gruenberg is correct that he has been granted leave to proceed only on claims implicating Tetzlaff for conduct in which he was directly involved. This defense, therefore, presents no bona fide issue of fact or law in this suit as currently pled, and so the court will also strike defense (6).

Gruenberg finally challenges Tetzlaff's three asserted affirmative defenses: Eleventh Amendment immunity, qualified immunity, and failure to exhaust. The latter two defenses will not be stricken: both present bona fide questions of law and fact, such as whether Tetzlaff actually took the actions pled in the complaint, whether those actions violated clearly established law and whether Gruenberg properly exhausted all his claims in this suit. The former, however, is essentially irrelevant, as Gruenberg has only sued Tetzlaff in his individual capacity. Therefore, affirmative defense (1) will be stricken.[3]

## III. Motion to Impose Sanctions

Pursuant to Fed. R. Civ. P. 11, Gruenberg also asks the court to impose sanctions on defendant for his purported failure to respond to his motion to strike. However, the record shows that defendant did timely file a brief in opposition. (*See* dkt. #18.) Based on correspondence from defendant's counsel, it appears that defendant may have forgotten to send a copy of that filing to Gruenberg but has now done so. (*See* dkt. #21.) Given that no

---

[3] As above, if Gruenberg were to amend his pleadings to allege claims against Tetzlaff in his official capacity, Tetzlaff would then have the opportunity to answer and assert this defense.

reply brief was permitted, Gruenberg's late receipt of the brief in opposition is harmless and does not justify imposing sanctions on defendant.

In any event, sanctions would not be appropriate under Rule 11 even if defendant *had* failed to respond to Gruenberg's motion. By its very terms, Rule 11 permits the imposition of sanctions when an attorney has "present[ed] to the court a pleading, written motion, or other paper" that does not comply with the requirements of Fed. R. Civ. P. 11(b). The *failure* to file a brief is entirely outside the Rule's purview, and so Gruenberg's motion for sanctions is denied.

**IV. Assistance in Recruiting Counsel**

Finally, as in companion cases 13-cv-089 & -453, Gruenberg has filed two motions for assistance in recruiting counsel. He has included with his motion four rejection letters from attorneys, demonstrating that he has met this court's requirement to "ma[k]e a reasonable attempt to obtain counsel" on his own before seeking assistance. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The next question is "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Id.* at 655. This inquiry is a practical one, encompassing factors like the plaintiff's literacy, communication skills and litigation experience; evidence surrounding the plaintiff's intellectual capacity and psychological history; and the difficulty of the claims at issue. *See id.* at 655-56.

Gruenberg admits that he is somewhat versed in the law. His filings demonstrate as much, citing to relevant case law and evincing an understanding of the Rules of Civil Procedure. In fact, he has personally litigated numerous cases *pro se* during his

incarceration, as the Seventh Circuit recognized in affirming a decision of the District Court for the Eastern District of Wisconsin denying his request for counsel. *See Gruenberg v. Gempeler,* 697 F.3d 573, 581-82 & n.9 (7th Cir. 2012). Gruenberg has submitted no evidence of psychological or other health problems that may prevent him from litigating this case. Nor does it appear that his Eighth Amendment claims are particularly complex -- they are premised not on complicated medical evidence but instead on conditions of confinement and alleged harassment.

Rather, Gruenberg's motions focus almost entirely on his lack of funds and a consequent inability to purchase materials he needs to litigate this case. In June of 2014, the Department of Corrections Business Office denied Gruenberg's request for legal loan funding. (*See* dkt. #22-1.) Gruenberg now contends that he cannot litigate this case because he does not have the money to do so. As a specific example, he argues that he receives only a single free first class mailing from the DOC per week, which is "inherently insufficient."

Gruenberg's penurious circumstances do not by themselves justify the appointment of *pro bono* counsel. "[I]t is this court's role to appoint counsel when the difficulty of the case exceeds the particular plaintiff's capacity to coherently present it to the judge or jury himself, not when the plaintiff could coherently present the case but would prefer counsel as a funding mechanism for the litigation." *Akright v. Capelle,* No. 07-cv-0625-bbc, 2008 WL 4279571, at *1 (W.D. Wis. Sep. 15, 2008); *see also Lindell v. Schneiter,* No. 06-C-608-C, 2007 WL 5517463, at *4 (W.D. Wis. Aug. 31, 2007) (denying request to appoint counsel based on claim that plaintiff lacked the money he needed to fund the suit); *Williams v. Berge*, No. 02-C-0010-C, 2002 WL 32350026, at *8 (W.D. Wis. Apr. 30, 2002) ("It would

8

be improper to appoint counsel solely for the purpose of shifting petitioner's costs to a lawyer."). Gruenberg offers no other reason why he needs the assistance of counsel to prosecute this matter, nor can the court discern one. As already noted above, Gruenberg appears eminently capable of litigating this suit on his own. Indeed, even his limited budget does not seem to impair his ability to litigate multiple state and federal lawsuits at the same time. (*See, e.g., Gruenberg v. Bittleman,* No. 13-cv-453-wmc; *Gruenberg v. Casper*, No. 13-cv-089-wmc.)[4] In light of these facts, the court will deny his request for counsel.

To the extent that Gruenberg's motion takes issue with the DOC's denial of legal loan funding itself, he should be aware that that denial is not a determination in which this court will interfere. The Seventh Circuit has previously held that an incarcerated litigant has "'no constitutional entitlement to subsidy,' *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002), to prosecute a civil suit; like any other civil litigant, he must decide which of his legal actions is important enough to fund." *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003). Thus, determinations regarding the extension of credit under Wis. Adm. Code § DOC 309.51 are "a matter strictly between [the litigant] and Wisconsin, and not any business of the federal courts." *Id.* Based on *Lindell*, this court has previously declined to interfere in prison officials' decisions with respect to the legal loan limit. *See, e.g.*, *Akright*, 2008 WL 4279571, at *1. Should Gruenberg conclude that "the limitations on his funds prevent him from prosecuting his case with the full vigor he wishes to prosecute it, he is free to choose to dismiss it voluntarily and bring it at a later date[.]" *Williams*, 2002 WL 32350026, at *8.

---

[4] Additionally, the court would be remiss not to point out, as the Seventh Circuit has recognized, that Gruenberg had, as of 2012, "filed at least six cases *pro se* in state and federal court alleging various violations during his incarceration." *Gruenberg*, 697 F.3d at 582 n.9.

ORDER

IT IS ORDERED that:

1. Plaintiff Darrin Gruenberg's motion for reconsideration (dkt. #10) is DENIED.

2. Plaintiff's motion to strike affirmative defenses (dkt. #17) is GRANTED in part and DENIED in part consistent with the opinion above.

3. Plaintiff's motion for Rule 11 sanctions (dkt. #19) is DENIED.

4. Plaintiff's motions for assistance in recruiting counsel (dkt. ##22, 25) are DENIED.

Entered this 29th day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge