IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DARRIN GRUENBERG,

                Plaintiff,              OPINION AND ORDER

  v.

                                            13-cv-095-wmc

LT. EDWIN TETZLAFF,

                Defendant.

---

      Pursuant to 42 U.S.C. § 1983, this court allowed *pro se* plaintiff Darrin Gruenberg to proceed against defendant Edwin Tetzlaff on Eighth Amendment claims arising out of the conditions of his confinement; and a strip search. (Dkt. #8.) Now before the court is Tetzlaff's Motion for Partial Summary Judgment on the grounds that Gruenberg failed to exhaust his administrative remedies. Because there are material facts in dispute, the court will deny that motion.

FACTS[1]

      Gruenberg is currently an inmate at the Wisconsin Secure Program Facility. At all relevant times to this action, however, Gruenberg was incarcerated at the Columbia Correctional Institution ("CCI"). Tetzlaff is a member of the prison staff at CCI.

      On February 24, 2011, Gruenberg failed to return his food tray in protest of what he considered unreasonably small food portions. Sometime after Gruenberg relinquished possession of the food tray, Tetzlaff transferred him to an observation area shower stall where he was subjected to a strip search. After the strip search, Tetzlaff placed

---

[1] The following facts are essentially undisputed for purposes of summary judgment, except where specifically noted.

Gruenberg in a cell in controlled segregation pursuant to Wisconsin Administrative Code § DOC 303.71. Gruenberg was then left naked in the cold, hard cell for approximately nine hours, despite asking Tetzlaff for a black mat and security smock.

Gruenberg filed at least one complaint related to the incident on February 24, 2011. The Inmate Complaint Examiner ("ICE") received offender complaint CCI-2011-4832 on March 7, 2011, in which Gruenberg complained about the conditions of his confinement. (Dkt. #29, ¶¶ 14–16.) More specifically, Gruenberg complained that Tetzlaff violated § DOC 303.71(2) in refusing his request for a black mat and security smock. (Dkt. #29-2, 11.)

However, Complaint CCI-2011-4832 said nothing about an unconstitutional strip search. The only material fact in dispute for purposes of defendant's motion is whether Gruenberg submitted a *second* offender complaint regarding an unconstitutional strip search. On this issue, the parties submit conflicting testimony. (*Compare* Dkt. # 29, *with* Dkt. # 31.)

In support of his motion, Tetzlaff submits the affidavit of Welcome Rose, a Corrections Complaint Examiner for the State Department of Corrections. In her affidavit, Examiner Rose states that after a diligent search of the "regularly conducted" business records of her office, she concluded that "Gruenberg did not file an offender complaint regarding a strip search conducted by Defendant Tetzlaff." (Dkt. # 29, ¶ 14.) Ms. Rose's search revealed just one offender complaint related to the incident on February 24, 2011: CCI-2011-4832, in which Gruenberg complained about his control placement but not the strip search.

In response, Mr. Gruenberg submitted a sworn declaration that directly contradicts the affidavit of Ms. Rose. In his declaration, Gruenberg specifically avers that on or around March 6, 2011, he drafted an institutional grievance regarding the allegedly unconstitutional strip search conducted on February 24, 2011. (Dkt. #31, ¶ 1.) Gruenberg also avers that he signed, dated, and sealed the grievance in an envelope addressed to the CCI ICRS office on or around March 6, 2011, and that he observed a second shift line staff collect the grievance at "final mail" on the same day. (Dkt. #31, ¶¶ 8, 12.) At the same time, Gruenberg concedes that he received no subsequent acknowledgement that the grievance was properly filed or received. (Dkt. #31, ¶ 14.)

Gruenberg further avers that he wrote a follow-up letter to "ICE Lane," dated March 21, 2011, inquiring as to why he had not received any acknowledgement of either of his two filed complaints. (Dkt. #31, ¶ 15–16.) Gruenberg received no acknowledgement of that letter as well. (Dkt. #31, ¶ 17.)

OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, for an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must produce "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If he fails to do so, "[t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex*, 477 U.S. at 323.

The outcome of defendant's pending Motion for Partial Summary Judgment turns on whether or not Gruenberg filed a second administrative complaint related to the alleged unconstitutional strip search. Gruenberg says he filed—or at least attempted to file—*two* complaints, one regarding the conditions of his control placement and another regarding the strip search. Tetzlaff says Gruenberg filed only the former.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535

4

(7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits").

The PLRA also requires "proper exhaustion; that is, the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (internal quotation marks omitted). "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System in all state adult correctional facilities in order "to afford inmates . . . a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. The first step to properly exhausting ones administrative remedies and utilizing the Inmate Complaint Review System is to file a complaint under section DOC 310.09. *Id.* § DOC 310.07. The relevant filing requirements are set forth below:

> (1) Complaints filed by an inmate or a group of inmates shall:
>    (a) Be typed or written legibly on forms supplied for that purpose.
>    (b) Be signed by the inmate.
>    (c) Not contain language that is obscene, profane, abusive, or threatens others, unless such language is necessary to describe the factual basis of the substance of the complaint.
>    (d) Be filed only under the name by which the inmate was committed to the department or the legal name if an inmate has had a name change.
>    (e) Contain only one issue per complaint, and shall clearly identify the issue.
> . . .

5

(6) An inmate shall file a complaint within 14 calendar days after the occurrence giving rise to the complaint, except that the institution complaint examiner may accept a late complaint for good cause.
. . .
(8) An inmate shall file a signed complaint by depositing it in a locked box designate for complaints or by submitting it to the office of the ICE via institution mail.

*Id.* at § DOC 310.09(1), (6), (8). Gruenberg has submitted competent evidence that he satisfied the above-stated filing requirements and effectively raised the issue of an alleged unconstitutional strip search.

Here, Gruenberg's sworn declaration puts in dispute whether: (1) he drafted an institutional grievance raising the issue of an unconstitutional strip search conducted at the direction of Tetzlaff on February 24, 2011 (dkt. #31, ¶ 1); (2) he signed the grievance, sealed it an envelope addressed to the CCI ICRS office, and observed a prison staff member collect it from his cell at "final mail" on March 6, 2011 (*id.* at ¶ 8, 12); (3) he received no subsequent acknowledgement of the grievance after it was collected (*id.* at ¶ 12); and (4) he submitted a follow-up letter inquiring into the status of his *two* complaints, again receiving no acknowledgement (*id.* at ¶¶ 15-17; see dkt. # 1-2 Ex. H for a copy of said letter). These declarations are sufficient to rebut Tetzlaff's Motion for Partial Summary Judgment.

The Seventh Circuit has repeatedly held that a "self-serving" affidavit is perfectly good evidence for purposes of overcoming a summary judgment motion.

> As we have said before, "[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Wilson v. McRae's, Inc.,* 413 F.3d 692, 694 (7th Cir. 2005). *See Dalton v. Battaglia,* 402 F.3d 729, 735 (7th Cir. 2005) ("We have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is

6

> based on personal knowledge."); *Payne v. Pauley,* 337 F.3d 767, 772–73 (7th Cir. 2003). Sworn affidavits, particularly those that are detailed, specific, and based on personal knowledge are "competent evidence to rebut [a] motion for summary judgment." *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (per curiam).

*Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Although self-serving, Gruenberg's declarations are detailed, specific, and based on personal knowledge. Therefore, they are also competent evidence to rebut the contrary affidavit of Rose and Tetzlaff's Motion for Partial Summary Judgment. Thus, there is a genuine dispute of fact as to whether or not Gruenberg filed a timely complaint regarding the alleged strip search.

While it is also true that filing a complaint is just the first step to fulfill the exhaustion requirements under Wisconsin law, Gruenberg is required to exhaust only those administrative remedies that are available to him. *See* 42 U.S.C. § 1997e(a); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (joining the Eight and Fifth Circuits in holding that administrative remedies are "exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'"). Viewing the evidence in a light most favorable to Gruenberg, as the non-moving party, the fact finder *could* conclude that Gruenberg exhausted the administrative remedies that were available to him. Here, the evidence viewed in a light most favorable to Gruenberg indicates that he drafted a grievance, signed it, put it in an envelope addressed to the CCI ICRS office, and watched a CCI staff member pick it up at final mail. What that CCI staff member did with the grievance after collecting it was out of Gruenberg's control. At that point, it is at least possible that a prison staff member tore it up, otherwise disposed of it, or simply misplaced it.

Whatever the case, "prison employees cannot exploit the exhaustion requirement by not responding to grievances," and "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Kaba*, 458 F.3d at 685; *see also Dole*, 438 F.3d at 811–12 ("Because [Plaintiff] properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [he] failed to exhaust his remedies. . . . By properly mailing his . . . complaint, alerting the [prison staff] that the complaint was mailed, and filing suit only after the [prison staff] failed to clarify what he should do next, [Plaintiff] had done all that was reasonable to exhaust his administrative remedies.").

Tetzlaff persuasively argues that "Gruenberg has made no showing that he actually attempted to exhaust his strip search claim apart from submitting a purported follow-up letter" and that "[i]f Gruenberg's showing is sufficient, any inmate could establish exhaustion simply by submitting an unauthenticated 'follow-up' letter purporting to refer to an unacknowledged inmate complaint." (Dkt. #34, 2–3.) Even so, this argument fails for at least three reasons. First, Gruenberg made a showing apart from the follow-up letter. He submitted a sworn declaration stating that he filed a complaint regarding the strip search. Second, the Seventh Circuit addressed the concern that "all prison inmates could . . . avoid the PLRA's exhaustion requirement simply by claiming that they mailed a letter" in *Dole*, ultimately falling on the side of allowing prisoners to proceed with their claims. *See Dole,* 438 F.3d at 813. The court found "that the potential for fraud does not justify obligating truthful prisoners to prove that they mailed their complaints when the

8

prison authorities do not provide them with means for verification." *Id.* Third, Tetzlaff's inability to produce a letter verifying receipt of plaintiff's original complaint letter lends credibility to Gruenberg's claim. Said another way, if Gruenberg did not receive verification of the *first* complaint regarding his conditions of confinement (a complaint the parties agree Gruenberg filed), there would likely be no verification of the *second* complaint regarding the strip search (a complaint Gruenberg alleges that he filed).

On this record, the fact finder could find for either party. If Gruenberg is believed, he filed a second complaint, which was mishandled by prison staff. If not, then Gruenberg filed just one complaint and never raised the issue of an unconstitutional strip search. For the court to decide this case now would require weighing the evidence and/or finding one witness more credible than the other. This the court cannot and will not do on summary judgment. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (swearing contest as to whether grievance was filed; summary judgment inappropriate).[2] Defendant's motion for partial summary judgment will, therefore, be denied.

---

[2] Admittedly, decisions on administrative exhaustion under the PLRA are different in that the *judge*, not the jury, ultimately must resolve contested factual issues germane to whether the prisoner has exhausted his administrative remedies. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Thus, the actual factual dispute over whether or not Gruenberg filed a second complaint regarding the strip search is one that this court ultimately must decide. Nonetheless, this is a credibility dispute rendering summary judgment inappropriate at this time. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("Roberts may have been lying about having filed a grievance – but alternatively the defendants may have been lying when they denied there was any record of such a grievance. A swearing contest requires an evidentiary hearing to resolve, and none was held."); *Ebrahime v. Dart*, 899 F. Supp. 2d 777, 783-84 (N.D. Ill. 2012) (prisoner contended he had filed grievances; defendant disputed that they had been filed because he could not remember name of the social worker to whom he had submitted them; "But that doesn't mean he didn't file

ORDER

IT IS ORDERED that defendant Lt. Edwin Tetzlaff's Motion for Partial Summary Judgment (Dkt. # 26) is DENIED.

Entered this 14th day of November, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

them. And if that's all the defendants can point to, they have not carried their burden of having demonstrated the plaintiff did not exhaust his administrative remedies. The issue becomes a matter of credibility, which cannot be resolved in a summary judgment proceeding."); *Hart v. Jenkins*, No. 11-cv-0582, 2012 WL 1037953, at *5 (E.D. Wis. Mar. 27, 2012) ("The Court will deny the defendants' motion for summary judgment at this time, but it will conduct a *Pavey* hearing to resolve the factual disputes regarding exhaustion in this case . . . ."). The parties should advise the court as to when a *Pavey* evidentiary hearing on this issue would be appropriate.